WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America,  Plaintiff,  v.  Marc Turi, et al.,  Defendants. | No. CR-14-00191-001-PHX-DGC  **ORDER**  **(SEALED)** |
|---|---|

Defendants Mark Turi and Turi Defense Group have filed a motion to dismiss the indictment. Doc. 12. The motion is fully briefed and Defendants have withdrawn their request for oral argument. Defendants have also filed a motion to strike surplusage from the indictment. Doc. 30. The motion is fully briefed. The Court will grant the motion to dismiss in part and deny the motion to strike.

**I.   Background.**

Since 2008, Defendant Turi "has been a State Department-registered broker of 'defense articles'" pursuant to the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778. Doc. 12 at 2.[1] Turi and his company, Defendant Turi Defense Group, Inc., "have supplied, and provided logistical support for the supply of, defense articles in furtherance of U.S. Government policy in Iraq and Afghanistan, among other places." *Id.* The indictment alleges that in early 2011, Defendants submitted two "Letter[s] of Prior

---

[1] Citations in this order are to page numbers placed at the top of the page by the Court's CMECF system, not to numbers at the bottom of the page.

Approval" to the Directorate of Defense Trade Controls ("DDTC") requesting approval from the State Department for Defendants to broker weapons from Eastern Europe to the National Transitional Council ("NTC") of Libya. Doc. 3 at 8-9. These requests for prior approval were denied on March 22, 2011. *Id.* at 9. Defendants allegedly attempted to amend their requests, but their amended request was denied in May 2011. *Id.*

The indictment alleges that Defendants also submitted a request for prior approval to broker the same weapons to the Government of Qatar. *Id.* This request was approved in a letter from the DDTC dated May 5, 2011. Although Defendants sought approval to broker weapons to Qatar, the indictment alleges that the intended end user of the weapons was the NTC in Libya. *Id.* at 11. The indictment also alleges that Defendants, seeking a possible alternate to Qatar, submitted another request for prior approval to broker the same weapons to the United Arab Emirates ("UAE"), but again intended the end user to be the NTC in Libya. *Id.* at 14.

Defendants were indicted on four counts in February 2014. *See* Doc. 3. Counts one and three allege violations of 22 U.S.C. § 2778(c) and 22 C.F.R. §§ 126.1, 127.2, and 127.3. Counts two and four allege violations of 18 U.S.C. § 1001(a)(3). Section 2778(c) provides that any person "who willfully, in a registration or license application or required report, makes any untrue statement of a material fact or omits to state a material fact required to be stated therein," shall be subject to fines of no more than $1,000,000 or imprisonment of no more than 20 years, or both, for each violation. 22 U.S.C. § 2778(c). Section 1001(a)(3) provides that any person who, in any matter within the jurisdiction of the United States, knowingly and willfully "makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry," shall be fined or imprisoned for no more than five years. Counts one and two concern the request for the proposed Qatari transaction, while counts three and four concern the request for the UAE transaction. 18 U.S.C. § 1001(a)(3).

**II.    Motion to Dismiss.**

Defendants argue that counts one and three must be dismissed because their

1 requests for prior approval of the transactions with Qatar and the UAE do not constitute a "license application" under 22 U.S.C. § 2778(c).  They also argue that counts in the indictment are multiplicitous.

### A. License Applications Under § 2778(c).

Section 2278(c) criminalizes only a specific kind of false statements and material omissions – those made in a "registration or license application or other required report." 22 U.S.C. § 2278(c).  The indictment alleges that Defendants made untrue statements "in an application for a *license* to broker weapons."  Doc. 3, ¶¶ 26, 30 (emphasis added). The government does not argue in response to Defendants' motion that the requests for prior approval were either a "registration" or "other required report" within the meaning of § 2778(c).  Doc. 12 at 7.  Thus, the question is whether Defendants' requests for prior approval constituted a "license application" under § 2278(c).

Each side cites statutory and regulatory language in support of its position.  The government argues that brokering activities clearly require a license under the statute, and that the regulations use the terms "license" and "approvals" interchangeably, suggesting they mean the same thing.  Defendants cite a definition of "license" in the regulations that they claim is inconsistent with the government's allegations in this case.  Defendants also note several places where the regulations refer to "license *or* prior approval," suggesting that "license" and "approval" do not have the same meaning.  Defendants argue that the statute and regulations are ambiguous and ask the Court to apply the rule of lenity. *United States v. Santos*, 553 U.S. 507, 514 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.").

After carefully reviewing § 2778 and reading the regulations as a whole, the Court finds that Defendants' requests for approval constituted a "license application" within the meaning of § 2778(c).  Admittedly, if portions of the regulations are read in isolation, they can appear to be inconsistent or ambiguous.  But when the statute and regulations are read together, and the organization and structure of the regulations are considered, their meaning is sufficiently plain to support the government's allegations in this case.

The Court also notes that the regulations at issue have been amended frequently during the last decade. The versions discussed below, unless noted otherwise, are those that were in effect when Defendants submitted their requests for prior approval in March and June of 2011.

The statute at issue – 22 U.S.C. § 2778 – provides that "every person . . . who engages in the business of brokering activities with respect to the . . . transfer of any foreign defense article . . . shall register with the United States Government[.]" 22 U.S.C. § 2778(b)(1)(A)(ii)(I). Defendants engaged in such brokering activities when they sought to arrange a transfer of weapons from Eastern Europe to Qatar and to the UAE. But the statute requires more than registration. It also provides that "[n]o person may engage in the business of brokering activities described in subclause (I) *without a license*, issued in accordance with this chapter, except that no license shall be required for such activities undertaken by or for an agency of the United States Government." 22 U.S.C. § 2778(b)(1)(A)(ii)(III) (emphasis added). Thus, the statute clearly required Defendants not only to register with the government, but also to obtain a "license" before engaging in brokering activities with Qatar or the UAE.[2]

The relevant regulations are found in Title 22 of the Code of Federal Regulations (concerning foreign relations), Chapter I (concerning the Department of State), and Subchapter M (concerning international traffic in arms). Each side cites to various portions of these regulations in support of its argument. The Court begins by looking at the structure and organization of the regulations as a whole.

The regulations in Subchapter M are divided into nine parts. Part 120 contains statements of purpose and definitions.[3] Part 121 concerns the United States' munitions list, which is referenced in other portions of the regulations. Part 122 contains

---

[2] The Court understands that Defendants satisfied the registration requirement. Their motion asserts that they were registered (Doc. 12 at 2), and each of the requests for prior approval contained the phrase "Registrant Code: K-2085" under Defendant Turi's name. Doc. 12 at 16, 23.

[3] The parts discussed in this paragraph are found at 22 C.F.R. Part 120, et seq.

- 4 -

regulations for the registration of entities in the business of manufacturing, exporting, or temporarily importing defense materials. Defendants were not engaged in that business during the events at issue in this case. They did not manufacture any of the weaponry at issue, and they did not seek to export the weapons from or temporarily import them into the United States. Thus, Part 122 is not relevant. Parts 123, 124, 125, and 126 concern licensing and other requirements for entities that fall under Part 122, so they too are irrelevant. Part 127 concerns violations of the regulations and statute and the penalties that can be imposed, and Part 128 concerns administrative procedures for enforcing the statute and regulation.

Part 129 is the most relevant potion of the regulations. It concerns "Registration and Licensing of Brokers," and it clearly implements the statutory requirement discussed above – that entities and individuals engaged in brokering of weapons both register and obtain a "license" for their brokering activities. *See* 22 U.S.C. §§ 2778(b)(1)(A)(ii)(I), (III). Part 129 is divided into nine sections.

Section 129.1 states the "Purpose" of Part 129. Consistent with the statute, it states "that persons engaged in the business of brokering activities shall register and pay a registration fee as prescribed in regulations, and that *no person may engage in the business of brokering activities without a <u>license</u> issued in accordance with the Act*." 22 C.F.R. § 129.1 (2011) (emphasis added). Thus, the portion of the regulations that deals directly with brokering activities makes clear, as does the statute, that a "license" is required.

Section 129.2 defines "broker" and "brokering activities" in terms that clearly apply to Defendants. A broker is "any person . . . who engages in the business of brokering activities," and brokering activities include the "transfer" or any "foreign defense article." 22 C.F.R. §§ 129.2(a), (b) (2011).

Sections 129.3 and 129.4 contains regulations for registering and paying registration fees, which are not at issue in this case. 22 C.F.R. §§ 129.3, 129.4 (2011). Section 129.5 addresses the effect of the regulations for countries under arms embargos

by the United States or United Nations. 22 C.F.R. § 129.5 (2011).

The most relevant portions of Part 129 – those that concern licenses – are found in sections 129.6 and 129.7. Section 129.6 equates licenses with approvals. It is titled "Requirement for License/Approval," and it states that "[n]o person may engage in the business of brokering activities without the prior written approval (license) of, or prior notification to, the Directorate of Defense Trade Controls[.]" 22 C.F.R. § 129.6(a) (2011).[4] Subpart (b) identifies activities – none applicable here – for which a "license" is not required. 22 C.F.R. § 129.6(b) (2011).

Section 129.7 also equates licenses with approvals. It is titled "Prior Approval (License)," and specifies the activities that require approval from the DDTC, including brokering "foreign defense articles." 22 C.F.R. § 129.7(a) (2011). Section 129.7(b)(1) states that the requirements of § 129.7 can be satisfied by a "license or other written approval issued under Parts 123, 124, or 125 of this subchapter." 22 C.F.R. § (b)(1) (2011). As already noted, Parts 123, 124, and 125 of the regulations concern manufacturers, exporters, and temporary importers and are not applicable here. Thus, the reference to "license or other approval" in § 129.1(b)(1) does not apply to the brokering activities for which Defendants sought permission. Section 129.7(b)(2) provides that § 129.7 can be satisfied by "[a] written statement from the [DDTC] approving the proposed activity." 22 C.F.R. § 129.7(b)(2) (2011). This written statement is the approval Defendants needed before engaging in the proposed transactions with Qatar and the UAE. Although this portion of the regulation uses the words "written statement . . . approving" rather than "license," it appears in a section titled "Prior Approval (License)" and thus is the "license" referred to in the statutes and the regulations.

Section 129.8 concerns notification requirements for small transactions and has no application here. Section 129.9 – the last in Part 129 – includes reporting requirements for brokers. It requires an annual report describing "brokering activities by quantity,

---

[4] The reference to "prior notification" is not applicable here, as it applies only to small transactions worth less than $1,000,000. 22 C.F.R. § 129.8. The indictment alleges that Defendants' proposed transaction was worth more than $250,000,000. Doc. 3 at 13.

- 6 -

type, U.S. dollar value, and purchaser(s) and recipients(s)," as well as "*license(s) numbers for approved activities*[.]"  22 C.F.R. § 129.9 (2011) (emphasis added).  The phrase "license numbers for approved activities" again confirms that licenses are the approvals referred to in Part 129.

In summary, the Court finds that the statue and regulations in effect in 2011 clearly required Defendants to obtain a license from the DDTC before engaging in foreign arms transfers to Qatar or the UAE.  The statute expressly required Defendants to obtain a "license" for "brokering activities."  22 U.S.C. § 2778(b)(1)(A)(ii)(III).  The relevant section of the regulations was titled "Registration and Licensing of Brokers." 22 C.F.R. Part 129.  Section 129.1 provided that "no person may engage in the business of brokering activities without a license issued in accordance with the Act."  22 C.F.R. § 129.1 (2011).  And the portions of the regulations that described the licensing process equated approvals with licenses.  22 C.F.R. § 129.6(a), (b) ("License/Approval" and "approval (license)); 22 C.F.R. § 129.7 ("Prior Approval (License)").  Given these clear provisions, the Court cannot accept Defendants' argument that the approval they sought was something different from the license required by the statute and regulations.

Defendants' requests for prior approval and the DDTC's response are consistent with this conclusion.  Defendants addressed each of their requests to the director of "Licensing" at the DDTC.  Doc. 12 at 15, 22.  And when the Director responded, he not only used the title "Director, Office of Trade Controls Licensing," but he also stated that the approval was granted under § 129.7.  *Id.* at 19.  As noted above, that section concerns "Prior Approval (License)" for brokers.  22 C.F.R. § 129.7 (2011).

Defendants rely on § 120.20 of the regulations to support their argument that the requests were not for a license.  That section defines "license" as "a document bearing the word 'license' issued by the [DDTC]."  22 C.F.R. § 120.20 (2011).  Defendants argue that the DDTC response to their requests did not bear the word "license" and therefore was not a license under this definition.  But the definition in § 120.20 concerns a specific kind of transaction – a license "which permits the export or temporary import of a

specific defense article[.]" 22 C.F.R. § 120.20 (2011).  As noted above, Defendants were not proposing to engage in such a transaction; they were seeking permission for brokering activities.  Their request therefore was governed by Part 129, not § 120.20.[5]

The Court concludes that Defendants' requests for prior approval constituted a "license application" within the meaning of 22 U.S.C. § 2778(c).  This portion of Defendants' motion to dismiss will be denied.

### B. Multiplicity.

"An indictment is multiplicitous when it charges multiple counts for a single offense, producing two penalties for one crime and thus raising double jeopardy questions."  *United States v. Stewart*, 420 F.3d 1007, 1012 (9th Cir. 2005) (citing *United States v. Vargas-Castillo*, 329 F.3d 715, 718-19 (9th Cir. 2003)).  "[T]wo counts within an indictment are not multiplicitous if 'each separately violated statutory provision requires proof of an additional fact which the other does not.'"  *Stewart*, 420 F.3d at 1012 (quoting *Vargas-Castillo*, 329 F.3d at 718-19); *see also Blockburger v. United States*, 284 U.S. 299, 304 (1932).

The statutes at issue here – § 1001(a)(3) and § 2778(c) – each require a knowing or willful act, a material falsehood (whether by affirmative statement or omission), made to the United States government.  The key difference is that § 2778(c) penalizes false statements made in a registration, license application, or required report, while § 1001(a)(3) penalizes false statements in any document within the jurisdiction of the United States.  The documents that allegedly contained a false statement or omission in this case are the requests for prior approval.  To prove the § 2778 counts and the § 1001 counts, the government must prove the same facts – that Defendants told the government the weapons were going to Qatar or the UAE when in fact they were going to Libya.

The government may charge separate violations for two identical false statements

---

[5] Defendants also argue that the current version of § 120.20 defines both "license" and "other approval," proving they are not the same.  The Court does not find this point persuasive in light of the clear requirement in the statute and regulations that Defendants obtain a "license."

- 8 -

where (1) the defendant was asked the same question and gave the same answer each time, and (2) the second false statement, although identical to the first, further impaired the operations of the government. *Stewart*, 420 F. 3d at 1013.  In this case, however, the government did not charge Defendants with two violations arising from two identical false statements.  It charged them with two crimes arising from a single false statement.

The violation alleged in counts one and two involves listing Qatar as the end user in a single documents – the March 2011 request for prior approval.  The violation is described as a material omission and false statement in count one and as a false statement in count two (Doc. 3, ¶¶ 26, 28), but characterizing the criminal act as either an omission or false statement does not change the elements needed to prove the offense.  The elements to prove an offense under § 1001(a)(3) are subsumed by the elements needed to prove a violation of § 2778(c).

Similarly, the violation alleged in counts three and four involves listing the UAE as the end user in a single document – the June 2011 request for prior approval.  It is characterized as a material omission and false statement in count three and as a false statement in count four (Doc. 3, ¶¶ 30, 32), but the underlying falsehood is the same in both counts.

The government argues that counts one and three "allege broader violations by Defendant of a regulatory offense, that being the [AECA], 22 U.S.C. § 2778(c), by actively engaging in the business of brokering arms to individuals in Libya, all the while withholding this material fact from the [State Department.]"  Doc. 46 at 5.  The government goes on to argue that "the AECA, unlike 18 U.S.C. § 1001, is designed to allow the government to fulfill a regulatory function," and that "violation of the AECA is, thus, a regulatory crime."  *Id.* at 5-6.  But this statutory purpose does not change the elements required to prove the offense.  The government does not show how § 1001 and § 2778(c) each "requires proof of an additional fact where the other does not." *Stewart*, 420 F.3d at 1012 (quoting *Vargas-Castillo*, 329 F.3d at 718-19).  As Defendants correctly note, the government "has identified no fact that it would need to prove to convict

Defendants under § 1001 that it would not also need to prove to convict them of the § 2778 charges[.]" Doc. 42 at 5.

Defendants rely on *United States v. Rose*, 570 F.2d 1358, 1363 (9th Cir. 1978), which the government does not address in its response. *Rose* examined whether convictions under § 1001 and 18 U.S.C. § 542 – a statute penalizing the introduction of imported merchandise into the United States by means of a false statement – were multiplicitous. *Id.* *Rose* found that the convictions were multiplicitous, reasoning that § 1001, when "properly construed, . . . serves as a catch-all, reaching those false representations that might substantially impair the basic function entrusted by law to [a particular agency], but which are not prohibited by other statutes." *Id.* (internal quotation marks omitted). *Rose* found that the "legislative history [of § 1001] reveals no evidence of an intent to pyramid punishment for offenses covered by another statute as well as by § 1001." *Id.*

Because Defendants' request for prior approval constituted a license application as explained above, the false statements allegedly made by Defendants in the requests are covered by § 2778(c). The Ninth Circuit has already found that there is no evidence in the legislative history of § 1001 "of an intent to pyramid punishment for offenses covered by another statute as well as by § 1001" (*Id.*), and the government has not directed the Court to any authority demonstrating that Congress intended for individuals to be punished under both § 2778 and § 1001. The Court therefore concludes that Defendants cannot properly be subjected to liability under both provisions.

Counts one and three are multiplicitous of counts two and four. The government cannot prosecute both sets of counts. The Court will require the government to elect which set is to be dismissed from the indictment.[6]

---

[6] The government argues that a jury could find that the government "did not prove beyond a reasonable doubt that Defendant falsely stated the weapons were for [Qatar] – under a potential defense theory that the weapons were to be warehoused in Qatar before they were transferred elsewhere," but that the jury could find, based on the same presentation of facts, that "the Defendant did omit a material fact, as the weapons were intended for Libya rebels not for the Government of Qatar." Doc. 36 at 10 (emphasis in original). This possible jury determination does not eliminate the clear possibility that

- 10 -

### III. Motion to Strike Surplusage.

Defendants argue that paragraphs two through five and nine of the indictment are prejudicial and imply that Defendants committed a crime not charged in the indictment. Doc. 30 at 2. The government responds that it is willing to strike all of paragraph three and some portions of paragraphs two and four, but that no modifications to paragraphs five and nine are necessary. Doc. 41 at 5. The Court's usual practice is to use jury instructions to describe the charges to the jury, not to read the indictment or provide copies of it to the jury. If either party wishes to have the indictment shared with the jury at trial, the parties can then discuss redactions and raise any disagreements with the Court. The Court sees no need to resolve the surplusage debate now.

**IT IS ORDERED:**

1. Defendants' motion to dismiss (Doc. 12) is **granted in part** and **denied in part**. The Court dismisses either counts one and three or counts two and four as multiplicitous. Within seven days of this order, the government shall notify the Court and Defendants of the counts it elects to have dismissed under this ruling.

2. Defendants' motion to strike surplusage (Doc. 30) is **denied**.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from 7/23/14.

Dated this 21st day of October, 2014.

_____
David G. Campbell
United States District Judge

cc: AUSA/Defense counsel

---

the jury could convict Defendants of counts one and two on the basis of the same false statement. The government cannot save multiplicitous counts by speculating about how a jury might harmonize them.