JOHN S. LEONARDO
United States Attorney
District of Arizona

KRISTEN BROOK
DAVID A. PIMSNER
Assistant U.S. Attorneys
Arizona State Bar No. 023121
Arizona State Bar No. 007480
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona  85004
Telephone:  602-514-7500
Email: Kristen.Brook@usdoj.gov
JULIE A. EDELSTEIN
Trial Attorney
Counterintelligence and Export Control Section
National Security Division
Department of Justice
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-14-00191-PHX-DGC |
| Plaintiff, | **GOVERNMENT'S MEMORANDUM RE CIPA PROCEDURES** |
| vs. | |
| 1. Marc Turi, and<br>2. Turi Defense Group, | |
| Defendants. | |

On June 3, 2015, this Court ordered the parties in the above-captioned matter to brief two issues prior to ruling on the government's Motion for a Protective Order pursuant to Section 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III: (1) whether the government, in order to invoke the state secrets privilege, needs to obtain an affidavit from the head of the government agency asserting the privilege; and (2) the nature of and factors to be considered in any balancing the Court must do of the defendant's interests and the government's interests in deciding whether to require disclosure.  The government addresses these issues in turn.

I.  **To Invoke Its Classified Information Privilege, the Government Does Not Need To Obtain an Affidavit from the Head of a Government Agency**

At the outset, the government notes that the privilege that it relies on to protect classified information in a federal criminal case is not the state secrets privilege. In CIPA proceedings, the government relies on the classified information privilege, which has also been referred to by the federal courts as the national security privilege. *See, e.g., United States v. El-Mezain*, 664 F.3d 467, 520 (5th Cir. 2011) (discussing classified information privilege); *United States v. Abu Ali*, 528 F.3d 210, 247 (4th Cir. 2008) (same); *United States v. Yunis*, 867 F.2d 617, 622-23 (D.C. Cir. 1989) (same). Unlike the assertion of the state secrets privilege in a civil case, the government's claim of a classified information privilege in a federal criminal case is governed by CIPA's comprehensive procedural framework, which provides a step-by-step approach to handling classified information in criminal proceedings. CIPA does not require a certification lodged by the head of the department with control over the information at issue in the case.

Under CIPA, Section 4 addresses discovery and allows a court, "upon a sufficient showing," to "delete specified items of classified information from documents to be made available to the defendant through discovery," or to substitute a summary or statement of relevant facts. *See also* Fed. R. Crim. P. 16(d)(1) (permitting restrictions on discovery for "good cause"). The government may request such authorization in an *ex parte* pleading. Since the enactment of CIPA, courts have routinely found that the government has met its burden to make a "sufficient showing" regarding the classified materials through the submission of a declaration from an official with original classification authority, and have not required that the official hold a particular rank or title within that organization.

The Second Circuit, however, is the exception to this rule. In *United States v. Aref*, 533 F.3d 72 (2d Cir. 2008), the court held that the applicable privilege under CIPA is the state secrets privilege, *id*. at 78-79, and that the privilege must be invoked using the procedures described in the civil case *United States v. Reynolds*, 345 U.S. 1 (1953); that

is, there must be a claim by the "head of the department which has control over the matter, after actual personal consideration by that officer." *Aref*, 533 F.3d at 80 (quoting *Reynolds*, 345 U.S. at 8). *Aref* is not governing law in the Ninth Circuit, and the government submits that, with regard to the proposition discussed herein, *Aref* was wrongly decided. As explained above, the applicable privilege in a criminal case is the classified information privilege, and CIPA sets out the procedures to be followed in order to protect classified information in criminal cases.[1] Indeed, the other courts of appeals that have considered *Aref* have rejected both its conclusion that the state secrets privilege must be asserted under CIPA and its adoption of the *Reynolds* requirements in criminal cases. *See United States v. Rosen*, 557 F.3d 192, 198 (4th Cir. 2009) (declining to adopt *Aref* rule on *Reynolds* procedures); *El-Mezain*, 664 F.3d at 521-22 (expressing doubt about *Aref*'s holding on the state secrets privilege and declining to remand to require a *Reynolds* certification).

Although there are Ninth Circuit cases—*United States v. Sarkissian*, 841 F.2d 959, 966 (9th Cir. 1988), *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998), and *United States v. Sedaghaty*, 728 F.3d 885, 904 (9th Cir. 2013)—that refer to the "state secrets" privilege in the context of criminal cases, upon close examination, none of these cases requires the government to invoke the state secrets privilege in the CIPA context. In *Sarkissian*, the Ninth Circuit did not resolve the question of whether

---

[1] The use of different procedures concerning invocation of the state secrets privilege and the classified information privilege is also called for in light of significant differences in the effect and scope of the two privileges. Where properly invoked in civil cases, the state secrets privilege provides an absolute bar to use of the information. It can also result in dismissal of any causes of action in which the secret information is crucial to either the plaintiff or the defendant. *See Reynolds*, 345 U.S. at 11; *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1079 (9th Cir. 2010) (*en banc*). In contrast, the classified information privilege used in criminal cases through CIPA is a qualified privilege, which can be overcome, and does not result in dismissal of the matter. *See, e.g., Abu Ali*, 528 F.3d at 247. For a further discussion of the difference between the state secrets privilege and the classified information privilege, and how they have been erroneously conflated by courts, *see* S. Elisa Poteat, *Discovering the Artichoke: How Mistakes and Omissions Have Blurred the Enabling Intent of the Classified Information Procedures Act*, GEO. J. NAT'L SEC. L. & POL'Y (Feb. 12, 2014).

the *Reynolds* procedures apply to an assertion of privilege in a criminal case. Rather, the *Sarkissian* court merely stated that it was "assum[ing] *arguendo* that the enactment of CIPA does not affect the validity of *Reynolds*." 841 F.2d at 966. While that statement may be technically accurate (since CIPA and *Reynolds* apply in two separate and distinct arenas and, therefore, do not affect each other's validity), it should not be read to import the *Reynolds* requirements applicable in civil cases into the CIPA process used in criminal cases. Indeed, *Reynolds* itself acknowledged that criminal cases are different from civil cases, because in criminal cases, "the Government can invoke its evidentiary privileges only at the price of letting the defendant go free." *Reynolds*, 345 U.S. at 12; *see also* H.R. Rep. No. 96-831, pt. 1, at 15 n.12 (1980) (congressional committee report on CIPA explaining that the "state secrets privilege is not applicable in the criminal arena").

In *Klimavicius-Viloria*, the defendants argued that the material the government sought to withhold under CIPA "was not properly classified and the government did not follow the procedures required under CIPA." 144 F.3d at 1261. The Ninth Circuit merely cited *Sarkissian* and *Reynolds* for the proposition that the government had to assert a state secrets privilege by lodging a claim "by the head of the department which has actual control over the matter." *Id*. (quoting *Reynolds*, 345 U.S. at 8). Nevertheless, the court concluded that the government's CIPA filing in that case satisfied *Reynolds*, even though there had not actually been a certification by the head of the relevant agency, but rather a submission by a subordinate official with original classification authority. *See United States v. Klimavicius-Viloria*, No. 95-50546, 1996 WL 33418388, at *92 (9th Cir. 1996) (United States' brief to the Ninth Circuit).[2]

In *Sedaghaty*, the Ninth Circuit quoted the above language concerning the assertion of the state secrets privilege in *Klimavicius-Viloria* (which itself quoted the

---

[2] The government has also examined the declaration submitted in the *Klimavicius-Viloria* case and has confirmed that it was not made by the head of the department.

- 4 -

language in *Reynolds*).  728 F.3d at 904.  The government has conferred with government counsel involved in the *Sedaghaty* matter, and counsel confirmed that none of the declarations filed by the government in support of CIPA motions was executed by the head of the relevant agencies; rather, subordinate officials with original classification authority signed the declarations.  The Ninth Circuit, therefore, did not require the government to submit a head-of-agency declaration in *Klimavicius-Viloria* or *Sedaghaty*.  Accordingly, the court's statements in these cases concerning the invocation of the state secrets privilege were dicta, and *Klimavicius-Viloria* and *Sedaghaty* do not require that CIPA Section 4 declarations be executed by the head of an agency.  Furthermore, such a requirement could not be squared with the statutory language of CIPA itself or the reasoning in the recent court of appeals decisions rejecting this aspect of *Aref*.

Finally, in *United States v. Moalin*, No. 3:10-CR-4246 (S.D. Cal.), the defendants filed a motion requesting that the court require the government to formally invoke the state secrets privilege in any CIPA Section 4 motion through a head-of-agency declaration.  The government opposed this motion based on the same reasons asserted in the instant filing.  *See Moalin,* No. 3:10-CR-4246, at Dkt. No. 150.  The *Moalin* court did not ultimately require the government to submit head-of-agency declarations.

In short, the Court should not require the government to submit a head-of-agency certification with respect to any CIPA filings in this matter because it is not supported by CIPA or any other applicable law.  Rather, the Court should adhere to the statutory requirements of CIPA—which do not import to federal criminal cases the *Reynolds* procedures meant to apply in civil cases—and permit the government to assert the classified information privilege through the submission of a declaration by an official with original classification authority.

### II. In Balancing the Government's Need To Protect National Security Information Against a Defendant's Need for the Information, the Court Should Defer to the Government's Assessment of the National Security Risk and Consider the Specific Conduct Charged and the Particular Defense To Be Asserted

When the government seeks to withhold information in discovery pursuant to CIPA Section 4, the Court must consider the validity of the government's claim of the classified information privilege. *Klimavicius-Viloria*, 144 F.2d at 1261. Then, the Court should determine whether the classified information is "relevant and helpful" to the defense. *Id.* (quoting *Yunis*, 867 F.2d at 623).

In the Ninth Circuit, even if classified information is relevant and helpful, it need not necessarily be disclosed to the defense. Rather, if the Court deems classified information to be relevant and helpful, the Court should balance the government's need to protect the information from disclosure against the defendant's need for the information. *Sarkissian*, 841 F.3d at 965 (calling defendants' argument that CIPA forbids balancing national security concerns against a defendant's need for documents "meritless" and holding that on such discovery issues, "the court can engage in balancing"); *see also Roviaro v. United States*, 353 U.S. 53, 62 (1957) ("The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense."); *United States v. Yunis*, 867 F.2d 617, 625 (D.C. Cir. 1989) (not reaching the question of whether "the defendant's interest in disclosure [should be balanced] against the government's need to keep the information secret," but acknowledging that *Roviaro* suggests such a balancing test and that the Ninth and Fourth Circuits apply it); *Klimavicius-Viloria*, 144 F.2d at 1261 (citing *Sarkissian* for the proposition that "the court may engage in balancing").[3]

---

[3] The legislative history of CIPA suggests that balancing is appropriate in weighing whether classified information should be ordered discovered to the defense. S. Rep. No. 96-823 at 6, *reprinted in* 1980 U.S.C.C.A.N. at 4299-4300. District courts outside the Ninth Circuit have also recognized that national security interests are indeed properly

At least one court has referenced this balancing test in declining to order the production of material to the defense. In *United States v. Khan*, the court explained:

> Even were we to find this sub-set [of classified information] to be marginally helpful, we would still grant the government's motion because the national security damage that would stem from disclosure to the defense, as articulated in the classified declarations of United States government officials, outweighs any arguable need for the classified information at issue, as articulated *ex parte* by defense counsel to the Court and in the defense's filings in this case.

No. 08 CR 621, 2010 WL 330241, at *3 (S.D.N.Y. Jan. 20, 2010).

In considering the government's classified information privilege, the Court should bear in mind that the privilege protects broader interests, for example, than the typical law enforcement or crime-fighting interest protected by the informant's privilege. Indeed, the government's interest in protecting national security is "compelling." *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980); *see also Yunis*, 867 F.2d at 623. The classified information privilege not only protects the contents of classified information for its own sake, but also protects the government's interest in keeping secret its "intelligence-gathering capabilities" and its "sources and methods." *Yunis*, 867 F.2d at 623. Furthermore, the classified information privilege also protects the government's ability to conduct foreign affairs, because the privilege protects information that is classified where disclosure would harm diplomatic relations. *Cf. Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983) (discussing national security concerns underlying the state secrets privilege in a civil case).

In weighing the government's interest in protecting the information, the Court should afford appropriate respect to the government's determination (as set forth in the

---

weighed in determining what information is material, particularly because classified information might only be minimally relevant or marginally helpful to a case. *See, e.g.*, *United States v. George*, 786 F. Supp. 56, 58 (D.D.C. 1992) ("Materiality is, to some degree, a sliding scale; when the requested documents are only tangentially relevant, the court may consider other factors, such as . . . the national security interests at stake, in deciding the issue of materiality.").

- 7 -

classified declaration previously filed with the Court) that disclosure of the information would harm national security.  *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-34 (2010) (noting that courts should defer to Executive Branch findings implicating sensitive and weighty national security interests); *see also United States v. Smith*, 780 F.2d 1102, 1108-09 (4th Cir. 1985) (discussing why the government had a substantial interest in protecting information at issue from disclosure).  Courts similarly must defer to the executive branch's classification decisions.  *United States v. Zazi*, No. 10–CR–60, 2011 WL 2532903, at *2 n.3 (E.D.N.Y. June 24, 2011) ("[A]s Section 1 of CIPA recognizes, classification is an executive decision, one that courts are ill-suited to second-guess."); *United States v. Aref,* No. 04-CR-402, 2007 WL 603510, at *1 (N.D.N.Y. Feb. 22, 2007) (reasoning that "becom[ing] the arbiter of this Country's national security . . . clearly is not the Court's function in a CIPA case").

This deference to the Executive Branch is necessary because courts "are ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications in that area."  *El-Masri* v. *United States*, 479 F.3d 296, 305 (4th Cir. 2007) (quoting *United States* v. *Marchetti*, 466 F.2d 1309, 1318 (4th Cir. 1972)).  As the Fourth Circuit has put it:

> The executive branch's expertise in predicting the potential consequences of intelligence disclosures is particularly important given the sophisticated nature of modern intelligence analysis, in which the significance of one item of information may frequently depend upon knowledge of many other items of information[.]

*Id*. (citation, alterations, and internal quotation marks omitted).  Courts are particularly unsuited to understand how various pieces of information fit together.  *See C.I.A. v. Sims*, 471 U.S. 159, 176, 180 (1985) (because judges have limited "background in the delicate business of intelligence gathering," the Executive is better equipped to "weigh the variety of complex and subtle factors" in assessing the risks of disclosure of information); *United States* v. *Snepp*, 897 F.2d 138,141 n.2 (4th Cir. 1990) ("Courts must avoid second-guessing the CIA's decision to classify information because they have only a limited

knowledge of foreign intelligence matters."); *Yunis*, 867 F.2d at 623 ("Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods."). Accordingly, this Court should afford due deference to the government's assessment (as explained in detail in its classified declaration) that there are compelling national security reasons for preventing disclosure of the classified information in this case.

In balancing the defendant's need for the information against the government's interest in non-disclosure, the court should consider "the particular circumstances of each case, . . . [including] the crime charged, the possible defenses, the possible significance [of the information at issue], and other relevant factors." *Roviaro*, 353 U.S. at 62; *see also Yunis*, 867 F.2d at 624 (deciding that the relevance of the information at issue was "no more than theoretical" because "[n]othing in the classified documents in fact goes to the innocence of the defendant *vel non*, impeaches any evidence of guilt, or makes more or less probable any fact at issue in establishing any defense to the charges"); *cf. Smith*, 780 F.2d at 1108 (noting in the context of Section 6 CIPA proceedings on admissibility that "[o]ne of the most important factors to be considered is the materiality of the evidence to the defendant's particular defense").

Importantly, here, the only remaining charge against the defendants is "willfully and knowingly" making a materially untrue statement and omitting a required material fact on two applications to the Department of State. *See* Indictment (Dkt. No. 3), Counts 1 & 3. The defense has proffered as to its possible defenses in a support of a motion to compel (*see* Dkt. No. 55 at 3-4),[4] which should allow the Court to determine that the

---

[4] The Court also has discretion to permit the defense to submit *ex parte* its theory of the case to assist the Court in determining how important the information at issue would be to the defense. *See, e.g., Khan*, 2010 WL 330241, at *3.

information at issue would not be significant[5] to the defense, and therefore the defendant's need for the information is insufficient to overcome the government's interest in protecting the information from disclosure.[6]

### III. Conclusion

In sum, to invoke its classified information privilege, the government need not submit a declaration from the head of an agency. In considering the government's interest in non-disclosure, the Court should defer to the government's assessment of national security concerns articulated in its Section 4 motion and supporting materials, and in balancing the government's interest against the defendant's need for the information, the Court should focus on the particular conduct charged and the defenses to be asserted.

Respectfully submitted this 10th day of June, 2015.

JOHN S. LEONARDO
United States Attorney
District of Arizona

*/s/ Kristen Brook*
KRISTEN BROOK
DAVID PIMNSER
Assistant U.S. Attorneys

JULIE A. EDELSTEIN
Trial Attorney
Counterintelligence and Export Control Section
National Security Division
Department of Justice

---

[5] It is apparent from the case law that any significance must not be merely "theoretical." *See Yunis*, 867 F.2d at 623; *see also Klimavicius-Viloria*, 144 F.3d at 1261("[I]nformation meets the standard for disclosure 'only if there is a reasonable probability that the result of the proceeding would be different.'" (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985))).

[6] Moreover, "inculpatory material which the government does not intend to offer at trial need not be disclosed. Such information cannot conceivably help a defendant, and therefore is both unnecessary and useless to him." *United States v. Rahman*, 870 F. Supp. 47, 52 (S.D.N.Y. 1994).

# **CERTIFICATE OF SERVICE**

I hereby certify that on 6/10/2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Jean-Jacques Cabou, Attorney for Defendant Marc Turi, and
Thomas Dean Ryerson and Alexis E. Danneman, Attorneys for Turi Defense Group

KB/ceb